IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOEL TIRADO GONZALEZ,

Plaintiff,

v.                                                    CIVIL NO. 14-1316 (CVR)

WENDCO OF PUERTO RICO, INC.,

Defendant.

## OPINION AND ORDER

## INTRODUCTION

Plaintiff Joel Tirado Gonzalez ("Plaintiff" or " Tirado") filed this case against his former employer Wendco of Puerto Rico ("Defendant" or "Wendco") alleging discrimination and a hostile work environment based on his disability, in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et. seq.*, Puerto Rico Law 44, P.R. Laws Ann. tit. 1, § 501*, et seq.* and retaliation in violation of the ADA and Puerto Rico Law 115, P.R. Laws Ann. tit. 29, § 194, *et seq.*

Before the Court now is Defendant Wendco's "Motion for Summary Judgment" (Docket No. 55); Plaintiff's Opposition thereto (Docket No. 63); Defendant's Reply to Plaintiff's Opposition (Docket No. 76); and Plaintiff's Sur-Reply (Docket No. 88).

For the reasons explained herein below, the Court GRANTS Defendant Wendco's Motion for Summary Judgment. Accordingly, this case is DISMISSED with prejudice.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not-genuinely controverted.' " Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary

judgment.   A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b).  A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c).   If they so wish, they may submit a separate statement of facts which they believe are in controversy.  Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); <u>P.R. Am. Ins. Co. v. Rivera-Vázquez</u>, 603 F.3d 125, 130 (1st Cir. 2010) and <u>Colón</u>, 869 F.Supp.2d at 226.  Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." <u>Hernández</u>, 486 F.3d at 7.

At the outset, the Court must mention that Plaintiff's Opposition to Defendant's Statement of Uncontested Material Facts was procedurally non-compliant with the Local Rules, insofar as many of the denials do not oppose the truth of the statement offered.  A review of Plaintiff's qualifications of Defendant's fact statements shows that they are either irrelevant to the matter at hand, offered additional evidence not related to the fact in question and/or failed to contradict it, or consisted of mere "speculation, generalities, conclusory assertions, improbable inferences, and, for lack of a better phrase, a lot of 'hot air.' " <u>Domínguez v. Eli Lilly and Co</u>., 958 F.Supp. 721, 728 (D.P.R. 1997).

Furthermore, while it is true that in the summary judgment context all reasonable inferences must be drawn in favor of the non-moving party, the District Court is not obliged to accept as true or to deem as a disputed material fact each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a

party.  See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 6 (1st Cir. 1994) (a party resisting summary judgment may not rest on mere allegations or denials, but must identify and allege specific facts showing a genuine issue for trial); Velázquez-Fernández v. NCE Foods, 476 F.3d6, 10 (1st Cir. 2007).

In the instant case, most of Defendant's proposed material facts stand uncontested because the evidence proffered by Plaintiff to contradict them is the self-sustaining word of a person, Plaintiff's mother, who is not a party to this case.  It is Plaintiff who must prove his case, not his mother.  Thus, much of the evidence submitted by Plaintiff in order to rebut the defenses offered by Defendant is not direct evidence by Plaintiff Tirado, but by his mother.  This is classic hearsay which is not covered by any of the hearsay exceptions.  As a result thereof, the Court deemed admitted most facts from Defendants' Statement of Uncontested Material Facts.

## UNCONTESTED FACTS

1. Wendco operates the Wendy's fast-food restaurant chain in Puerto Rico and currently has over 3,000 employees. The company's line of business includes the sale of prepared foods and drinks.  D. Exhibit A, ¶ 4.

2. Plaintiff suffers from intellectual "discapacity" or mental retardation since birth. P. Exhibit 3, p. 22, l. 22-25; p. 23, l. 1-17.

3. Plaintiff was employed by Wendco from November 4, 2006 to October 8, 2015, when he resigned.  D. Exhibit B, pp. 20; D. Exhibit A, ¶¶ 12, 33; D. Exhibit A-4;  D. Exhibit A-9.

4. Wendco has a set of human resources policies, including a policy against discrimination, sexual harassment, and retaliation. The policy includes a

procedure to report perceived discrimination, harassment and retaliation. D. Exhibit A, ¶ 5; D. Exhibit A-1, pp. 2-8.

5. Thus, employees must contact Wendco's Human Resources Department to complain of any discrimination, harassment and/or retaliation. D. Exhibit A, ¶ 6; D. Exhibit A-1, pp. 2-8.

6. Wendco's policy against discrimination, harassment, and retaliation prohibits among others, disability discrimination.  D. Exhibit A, ¶ 7; D. Exhibit A-1, pp. 2-8.

7. The Company's policy against discrimination, sexual harassment, and retaliation establishes that the employee is responsible for promptly informing the Human Resources Director if he believes that he has been subject to any type of discrimination, sexual harassment or retaliation.  D. Exhibit A, ¶ 8; D. Exhibit A-1, pp. 2-8.

8. A copy of the Employee Manual is provided to new employees. All employees are responsible for reading the policies, and ensuring that the policies are complied with. D. Exhibit A, ¶ 9.

9. During his employment with Wendco, Plaintiff received a copy of the Employee Manual. D. Exhibit A, ¶ 9; D. Exhibit A-2; D. Exhibit C, pp. 45, 63.

10. Plaintiff's mother, Carmen González, also received a copy of the Employee Manual.  D. Exhibit C, pp. 45, l. 5-9.

11. Plaintiff was hired by Wendco thru the Center of Training for Persons with Disabilities ("Centro de Adiestramiento para Personas con Impedimentos",

hereinafter "CAPI"), in the restaurant located in Cidra, Puerto Rico. Wendco's documents list him as a Crew Member, while CAPI's list him as a maintenance employee. D. Exhibit A ¶ 10; D. Exhibit A-3; P. Exhibit 2.

12. CAPI is an organization that provides support and job opportunities to people with disabilities through requests to employers from the private and public sector. D. Exhibit A, ¶ 11; D. Exhibit C, pp. 28-29.

13. Prior to working at Wendco, Plaintiff had no prior work experience. D. Exhibit B, p. 15; D. Exhibit C, p. 102.

14. On November 4, 2006, Plaintiff signed an employment contract which provided for a limited working schedule of eight (8) to twenty (20) hours per week. In his employment application, Plaintiff stated that he was available to work any day of the week. D. Exhibit A, ¶ 12; D. Exhibit A-4; D. Exhibit A-5.

15. From 2006 until August 20, 2011, Plaintiff reported to Angel Burgos ("Burgos"), and from that date until June 6, 2014, he reported to Carmen Avilés ("Avilés"), the General Manager of the Wendy's located in Cidra. D. Exhibit A, ¶ 14; D. Exhibit A-12; D. Exhibit A-13; D. Exhibit B, pp. 19, 20.

16. Plaintiff was required to wear a uniform provided by Wendco to perform his functions. Tirado received these uniforms at the beginning of his employment. D. Exhibit A-2, pp. 49-50; D. Exhibit C, pp. 92-93.

17. When Plaintiff later asked his supervisor for new uniforms, Wendco provided them. D. Exhibit C, pp. 92-93.

18. Plaintiff's duties included the following: serving soda, sweeping and mopping the restaurant floor, cleaning chairs, tables, glasses, trash bins and parking lot, putting the mixture in the Frosty machine, warming chili and cheese, serving hot potatoes, and cleaning the grill. D. Exhibit A, ¶ 15; D. Exhibit B, pp. 20, 21, 24, 25, 26; D. Exhibit C, pp. 68-72.

19. When Plaintiff began working at Wendco through CAPI, he received training in coordination with CAPI pertaining to his duties and responsibilities. D. Exhibit A, ¶ 16, 17; D. Exhibit A-3; D. Exhibit B, pp. 20, 21, 24, 25, 26; D. Exhibit C, pp. 68-72.

20. During said training CAPI established phases of work and intervention time to monitor plaintiff's performance. D. Exhibit A-3; D. Exhibit A, ¶ 16-17.

21. Wendco worked closely with CAPI in order to establish the tasks that Plaintiff could perform to achieve the best performance and integration of the duties and functions assigned to him. D. Exhibit A, ¶ 16; D. Exhibit A-3.

22. During CAPI's intervention time, CAPI determined that Plaintiff could perform all of the tasks that were assigned to him. D. Exhibit A, ¶ 17; D. Exhibit A-3.

23. Plaintiff did not file an internal complaint with regard to any of his supervisors, co-workers or any other company personnel during his time at Wendco. D. Exhibit C, pp. 34-35; D. Exhibit A, ¶ 18.

24. Tirado did not file a written or verbal internal complaint of disability discrimination or retaliation during his time at Wendco. D. Exhibit C, pp. 34-35, 63; D. Exhibit A, ¶¶ 19 & 20.

25. On one occasion, Plaintiff's mother went to pick Tirado up from work and heard Avilés telling Plaintiff in the garbage area that he had to do things the "easy way or the hard way" and that if not he would have to go to hell. P. Exhibit 1, p. 42, l. 9-23.

26. On another occasion, Avilés ordered Plaintiff to go fry potatoes while he was finishing cleaning the toilets. When Plaintiff told her he was going to wash his hands, she proceeded to punch out his time card and to tell him to go to hell. P. Exhibit 1, p. 35, l. 20-25; p. 36, l. 1-4.

27. The store manager at that time, Burgos, confirmed to Plaintiff's mother that this incident had in fact occurred. P. Exhibit 1, p. 36, l. 6-13.

28. Plaintiff's mother talked with one of the main supervisors from Wendco's central offices to explain the situation that was happening with her son, as instructed by store manager Burgos. P. Exhibit 1, p. 36, l. 10-13, 20-25.

29. As a result of this issue, Plaintiff's mother visited the Puerto Rico Department of Labor's Norms and Salaries Office. P. Exhibit 1, p. 38, l. 2-6.

30. Wendco Store Manager Burgos told Plaintiff's mother he would call to complain on behalf of Tirado. P. Exhibit 1, p. 76, l. 15-24.

31. On July 12, 2012, Nelly Díaz, Interim Regional Administrator for the Bureau of Labor, sent an email in which she notified Wendco about an alleged situation regarding Plaintiff's work environment. D. Exhibit A-6; D. Exhibit A, ¶ 21.

32. As a result thereof, Wendco's Human Resources Department commenced an investigation. D. Exhibit A, ¶ 22; D. Exhibit A-6; D. Exhibit A-7.

33. As part of the investigation, Wendco contacted CAPI in order to keep it abreast of the situation. D. Exhibit A, ¶ 23; D. Exhibit A-7.

34. On August 22, 2012, a social worker from CAPI visited the restaurant where Plaintiff was working in and met with his immediate supervisor, Avilés, to discuss among other things Plaintiff's performance. D. Exhibit A, ¶ 24; D. Exhibit A-7.

35. At the conclusion of the investigation, Wendco concluded that, based on the evidence collected, Plaintiff's allegations with regard to his supervisor were unfounded. Plaintiff was not interviewed as part of the investigation. D. Exhibit A, ¶ 25.

36. As part of the Labor Department's investigation, it was agreed that Wendco would conduct a follow-up investigation. D. Exhibit A, ¶ 26; D. Exhibit A-8.

37. In March 2013, Wendco conducted a follow-up investigation which consisted of among other things, interviewing Plaintiff's co-workers. Wendco concluded that Plaintiff's allegations pertaining to his supervisor, Avilés, were unfounded. D. Exhibit A, par. 27; D. Exhibit A-8.

38. During Plaintiff's employment with Wendco, the only accommodation that Plaintiff requested was related to the use of stairs because of his fear of heights. This accommodation was granted to Plaintiff at all times during his employment. D. Exhibit B, pp. 26, l. 6-19; D. Exhibit C, pp. 32, 33, 73.

39. Besides this request, Plaintiff did not submit any other request for accommodation. P. Exhibit C, pp. 32-33.

40. At all times during his employment, Plaintiff was provided with the accommodations in accordance with his alleged disability and CAPI's recommendations. D. Exhibit A, ¶ 28.

41. At no point during Plaintiff's employment was he demoted, suspended, or stripped of his duties and/or responsibilities. D. Exhibit A, ¶ 29.

42. At all times during Plaintiff's employment he was able to perform all of the duties and responsibilities assigned to him while at Wendco. D.  Exhibit C, pp. 69-70.

43. Plaintiff's disability did not prevent him from performing any of the duties and responsibilities of his position, although sometimes it was confusing for him and took him longer to do them. D. Exhibit C, pp. 69-70; P. Exhibit 3, p. 37, l. 3-20.

44. Pursuant to Wendco's time records, Plaintiff was assigned to work on Fridays and Saturdays prior to August 15, 2012. D. Exhibit A-11; D. Exhibit A, ¶ 32.

45. Pursuant to the attendance report of January 10, 2012, Plaintiff worked from 12:00 pm to 4:00 pm. D. Exhibit A-11; D. Exhibit A, ¶ 32.

46. Pursuant to the attendance report of April 11, 2012, Tirado punched out at 3:00 pm. D. Exhibit A-11; D. Exhibit A, ¶ 32.

47. On June 13, 2015, Plaintiff resigned from his job at Wendco. D. Exhibit A, ¶ 33; D. Exhibit A-9; D. Exhibit B, p. 67.

48. Dr. Leslie Ann Colón-Freyre ("Dr. Colón-Freyre") is Plaintiff's psychiatrist. Dr. Colón-Freyre recommended that Plaintiff resign from Wendco, as it was not beneficial for him to continue working there.  P. Exhibit 3, p. 19, l. 4-13.

49. On August 15, 2012, Plaintiff filed an administrative charge before the Puerto Rico Antidiscrimination Unit ("ADU"), alleging disability discrimination.  The ADU conducted two hearings.  D. Exhibit D; D. Exhibit E.

50. On December 13, 2013, the ADU notified its determination of "No Probable Cause" of employment discrimination due to disability.  D. Exhibit E.

51. On January 27, 2014, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Right to Sue, stating that it was closing its file.  The EEOC further asserted that: "[t]he EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." D.   Exhibit F.

52. On January 30, 2014, Plaintiff filed a second administrative charge before the ADU alleging retaliation.

53. On September 15, 2014, the EEOC issued a notification closing the case, stating that, "the EEOC is unable to conclude that the information obtained established violations of the statutes". D. Exhibits G and H.

## LEGAL ANALYSIS

Plaintiff has brought forth claims for hostile work environment based on his disability and retaliation in violation of the ADA, and several state law claims based on similar state statutes. The Court analyzes each one in turn.

## A. Hostile Work Environment.

Plaintiff Tirado's main allegation is that on or about September 2011 his supervisor, Avilés, began harassing him because of his disability and he was subjected to a hostile work environment in violation of the law. Succinctly put, Plaintiff's claims are: (1) Avilés ordered him to cook potatoes; after Plaintiff went to wash his hands, Avilés clocked him out and screamed at him to leave the store; (2) Avilés had him performing duties that he could allegedly not do because of his condition, such as cooking potatoes; (3) he was ordered to perform duties which were not his responsibility; (4) Avilés told him that he would learn "the easy way or the hard way" to perform other tasks; (5) Avilés would constantly check on him during his entire shift; (6) on three occasions, after arriving at work, Avilés told Plaintiff to leave because there was no work for him on that day and then proceeded to mark him as absent; (7) Avilés yelled at Plaintiff a lot and on one occasion, Plaintiff's mother allegedly witnessed how Avilés yelled at Plaintiff in front of clients and employees asking if he had cleaned everything and that, if he did not, she was going to kick him out and call his house; (8) Plaintiff was supposed to clock out at 3:00 pm on one occasion and was still working at 3:20 pm; (9) other employees mocked him in front of the supervisor and Avilés failed to take any action; (10) Plaintiff suffered two dizzy spells at work and his supervisor failed to help him; and (11) on one occasion Avilés told Plaintiff's mother that Plaintiff had too many absences and she threatened to fire him if his attendance did not improve. (Docket No. 28 at pp. 4-11).

In order to prove Plaintiff's claims, he must first establish that he was (1) disabled, (2) subjected to a hostile environment, and (3) the hostility was directed at him because of his disability. Quiles-Quiles v. Henderson, 439 F.3d 1, 5 (1st Cir. 2006). Once Plaintiff

establishes a *prima facie* case, the burden then shifts to Defendant to put forth a legitimate, non-discriminatory reason for its adverse employment decision and to produce credible evidence in support of its non-discriminatory reason. Freadman v. Metropolitan Property and Caves. Ins. Co., 484 F.3d 91 (1st Cir. 2007). If Defendant offers such a legitimate, non-discriminatory reason, the burden shifts back to Plaintiff to put forth evidence proving that the defendant's reason is "mere pretext, cloaking discriminatory animus." Freadman, 484 F.3d at 99.

An individual is considered disabled if he (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. Id. at 5. In the case at bar, there is no question that Plaintiff Tirado suffered from a mental disability since birth, and in fact, Defendant so admitted. See Docket No. 76-1, p. 39, item no. 18.

Turning then to the harassment claim itself, in order to establish a hostile work environment, Plaintiff has to establish that he suffered some sort of adverse employment action as a result of his disability, and that the change materially affected the conditions of his job. That is, Plaintiff must show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [his] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993). Among the factors relevant to this inquiry are the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance. Harris, 510 U.S. at 23, 114 S.Ct. 367.

The First Circuit has explained that "[a]dverse employment actions include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.' " White v. New Hampshire Dept. of Corrections, 221 F.3d 254, 262 (1st Cir. 2000) (quoting Hernández-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Marrero v. Goya of Puerto Rico, 304 F.3d 7, 23 (1st Cir. 2002).

Although there were some unsavory incidents in this case and Avilés might have used strong language on several occasions, the Court finds the instances fail to comply with the legal standard. The occasions complained of simply are sporadic, and are simply not pervasive enough to alter the conditions of Plaintiff's employment. ("[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities."). "Otherwise every trivial personnel action that an irritable ... employee did not like would form the basis of a discrimination suit." Williams v. Bristol–Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).

The Court reaches this conclusion mindful that, while the line between an unpleasant and a hostile environment one may sometimes be difficult to discern, "[t]itle VII does not attempt 'to purge the workplace of vulgarity' ". Del Pilar Salgado v. Abbott Labs., 520 F. Supp. 2d 279, 289 (D.P.R. 2007) (quoting Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430-431 (7th Cir. 1995)); see also Faragher v. City of Boca Raton, 524 U.S.

775, 788, 118 S. Ct. 2275, 2284 (1998) (Courts must filter out "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing); Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46-47 (1st Cir. 2003) ("[A] supervisor's unprofessional managerial approach ... [is] not the focus of the discrimination laws"); Gartman v. Gencorp Inc., 120 F.3d 127 (8th Cir. 1997) (Rude comments which are gender neutral do not imply discriminatory attitude); and Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 693 (8th Cir. 1997) (holding that evidence of "disrespect and ostracization by ... supervisors" did not establish an adverse employment action).  These are the types of incidents that the Court found in the present case, which are not actionable.

Although Plaintiff asks the Court to discredit two investigations launched by Defendant into this matter, they do form part of the administrative record in this case and thus, the Court is obligated to consider them.  The record further contains multiple letters written by Plaintiff's work colleagues stating that that they did not witness any disrespectful behavior by Avilés towards Plaintiff.  This is important because it serves to establish that, while some incidents might have occurred, they did not occur with the frequency or intensity alleged by Plaintiff in order to be actionable.  Furthermore, CAPI also conducted its own investigation into the matter and reached the same conclusion. Finally, it is worth noting that the two investigations took place because the Labor Department initially intervened in this matter, yet the allegations were found wanting.

Plaintiff also takes issue with the fact that his contract with CAPI states he would be performing only "maintenance" duties and, although initially confined to that, he was later assigned to work the grill and the potato fryer areas.  Yet, Plaintiff admitted in his

deposition that he could perform all these tasks and in fact, performed them well.   The

fact that performing these additional tasks might have made him uncomfortable and he

stated he "didn't have time" sometimes to complete them does not make the actions

complained of harassment.   Furthermore, Defendant's employment contract failed to

establish that Plaintiff would be limited only to maintenance and to cleaning the dining

area. As such, Plaintiff's assignment of duties to other areas was entirely appropriate,

provided he could perform the duties he was assigned to, which he demonstrated and

admitted he could perform.

Therefore, on the facts as alleged, the Court cannot conclude that Plaintiff has

established a viable hostile work environment claim.   As such, Defendant's Motion for

Summary Judgment as to the hostile work environment is GRANTED and the same is

DISMISSED WITH PREJUDICE.

**B. Retaliation.**

To prove his retaliation claim, Plaintiff had to establish that (1) he engaged in

protected conduct; (2) he experienced an adverse employment action; and (3) there was

a causal connection between the protected conduct and the adverse employment action.

The adverse employment action requirement may be satisfied by showing the creation of

a hostile work environment or the intensification of a pre-existing hostile environment.

See Noviello v. Boston, 398 F.3d 76, 89 (1st Cir. 2005); Gregory v. Daly, 243 F.3d 687,

701 (2d Cir. 2001). And, in proper circumstances, the causation element may be

established by evidence that there was a temporal proximity between the behavior in

question and the employee's complaint. Noviello, 398 F.3d at 86.  However, "the alleged

retaliatory action must be material, producing a significant, not trivial, harm." Carmona-

<u>Rivera v. Commonwealth of Puerto Rico</u>, 464 F.3d 14, 19 (1st Cir. 2006).   Once Plaintiff satisfies the *prima facie* burden, Defendant must produce a legitimate, nondiscriminatory reason for the adverse action. The ultimate burden then falls on the plaintiff to show that the employer's articulated reason was, in fact, a pretext covering up retaliation. <u>Wright v. CompUSA, Inc</u>., 352 F.3d 472, 478 (1st Cir.2003).

Plaintiff Tirado avers that adverse employment actions were taken against him after he filed a discrimination charge before the EEOC in August, 2012, to wit: a reduction in working hours; he was assigned to work on Fridays and Saturdays; and Defendant did not provide him with new uniforms for two years. (Docket No. 28, at p. 10-11).

It is undisputed that the filing of a claim before the EEOC constitutes protected action.  Yet, the Court finds Plaintiff is unable to carry his burden on the other two prongs of the legal standard.

Regarding the reduction in hours, the personnel attendance report submitted by Defendant shows otherwise. For instance, the time sheet for the week of December 8, 2012, shows Plaintiff worked 21 hours.  In the same fashion, the week of January 7, 2013 also shows him working 21 hours.[1]  As a whole, it would seem that Plaintiff averaged between 14-18 working hours a week, which belies his allegation that his working hours were reduced to 8.  In fact, Plaintiff even admits that other employees working hours were reduced.  <u>See</u> Docket No. 63, p. 10 ("it is clear that while other employees suffered a reduction in hours; it was Plaintiff who suffered the biggest reduction").  A claim for retaliation cannot lie if the actions complained of were instituted across the board and

---

[1] <u>See also</u> Defendant's Exhibit A-11, where a sampling was taken of the hours Plaintiff worked on a weekly basis after he filed his EEOC claim: October 27, 2012: 24 hours; November 17, 2012: 22 hours; December 29, 2012: 18 hours; January 28, 2013: 14 hours; February 11, 2012; 22 hours; March 4, 2013: 17.50 hours; March 18, 2013: 22 hours; April 1, 2013; 12 hours; April 8, 2013: 16 hours; April 22, 2013: 17 hours.

applied to other employees as well.  Furthermore, evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection. Che v. Massachusetts Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003).  No such disparity was shown here.

Even assuming that Plaintiff could establish a *prima facie* case, Defendant has shown that it had a legitimate, nondiscriminatory reason for the reduction in hours. It is uncontested that by the end of 2012, due to economic reasons, the Wendco Operations Management opted to reduce all of the employees' weekly working hours to twenty-five (25) hours or less, except management.  As a result thereof, store managers proceeded to reduce the weekly working hours of all of the restaurant employees, with certain exceptions pertaining to special situations or circumstances.  Plaintiff, however, was working under a limited work schedule contract which provided for an 8 to 20 hour week schedule,  and therefore, his  hours were not reduced.  Pursuant to Company records by the end of 2012, Plaintiff's weekly working hours averaged between 18-24 hours. Moreover, the relevant time records demonstrate that even before Plaintiff filed his EEOC charge, he had already been assigned to work on Fridays and Saturdays.   Finally, regarding the uniforms, Plaintiff's mother admitted that when she asked for the new uniforms, Defendant provided them to Plaintiff.

Because Defendant provided a valid non-discriminatory reason for its actions, Plaintiff must then bring forth evidence proving that this reason is pretextual.  Plainitff has been unable to do so.  See Rivera-Colón v. Mills, 646 F. Supp. 2d 224, 237 (D.P.R. 2009), *aff'd sub nom*. Rivera-Colón v. Mills, 635 F.3d 9 (1st Cir. 2011) ("A plaintiff can demonstrate that an employer's stated reasons are pretextual in any number of ways,

including by producing evidence that plaintiff was treated differently from similarly situated employees").

In the case at bar, besides stating that the timing of the restructuring is "suspicious", Plaintiff brings forth no evidence for the to conclude that Defendant acted with retaliatory and discriminatory mindset. Ramírez Rodríguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 86 (1st Cir. 2005) (upholding dismissal because the plaintiff failed to point to any "comments by the employer which intimate a retaliatory mindset" or demonstrated that he was subjected to differential treatment after filing the ADU complaint).

Since Plaintiff cannot show that Wendco's proffered reason was pretextual and that retaliation was the only factor behind the alleged retaliatory act, his retaliation claim must also fail and is hereby DISMISSED WITH PREJUDICE .

**C. State law claims.**

Law 44 is Puerto Rico's counterpart to the ADA. See Arce v. ARAMARK Corp., 239 F.Supp.2d 153, 169 (D.P.R. 2003). Like the ADA, Law 44 prohibits discrimination against individuals with disabilities, and "creates an obligation for any employer to provide reasonable accommodations, and prohibits discrimination against persons with disabilities." Román Martínez v. Delta Maint. Serv., Inc., 229 F.Supp.2d 79, 85 (D.P.R. 2002) (*quoting* Ríos Jaimán v. Cidra Mfg. Operations of Puerto Rico, Inc., 145 D.P.R. 746, 749 (1998)). Thus, the elements of proof necessary for a successful Law 44 claim are essentially the same as those for bringing a claim under the ADA. See, *e.g.*, Román Martínez, 229 F.Supp.2d at 85; Zayas v. Commonwealth of Puerto Rico, 378 F.Supp.2d 13, 23–24 (D.P.R. 2005).

Having found that Plaintiff's claims under the ADA must fail, his Law 44 claims must therefore also suffer the same fate. Accordingly, Defendant's Motion for Summary Judgment under Puerto Rico Law 44 is hereby GRANTED and the claim under Law 44 is hereby DISMISSED WITH PREJUDICE.

Law 115, on the other hand, protects employees who collaborate in investigations or offer testimony before an administrative, judicial or legislative forum, from adverse actions by their employers. P.R. Laws Ann. tit. 29, § 194a. Much like Title VII and the ADA. Law 115 establishes a burden-shifting framework. The employee must prove the violation through direct or circumstantial evidence that he participated in a protected activity and was subsequently discharged, threatened or discriminated against in his employment. Once done, the employer must provide a nondiscriminatory legitimate reason for the discharge, wherein the plaintiff must prove said reason is pretextual. Id. at § 194a(c).

Even assuming that Plaintiff Tirado has made out a *prima facie* case, his claim under Law 115 must still fail. Because Defendant has put forth a legitimate, non-discriminatory reason in its defense, Plaintiff is once again tripped up by the remaining requirements—that he suffered an adverse employment action and showing that Defendant's actions were a pretext. Inasmuch as Plaintiff has failed to make this showing, his retaliation claim under Law 115 must also fail.

Based on the foregoing, Defendant's Motion for Summary Judgment as to the Law 115 claim is GRANTED and the claim under Law 115 is DISMISSED WITH PREJUDICE.

## CONCLUSION

For all the foregoing reasons, the Court GRANTS Defendant Wendco's Motion for

Summary Judgment (Docket No. 55) and DISMISSES WITH PREJUDICE this case in its

entirety.

Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 10th day of January, 2018.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE